**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NORTHWESTERN GRADUATE WORKERS FOR PALESTINE (GW4P), IFEAYIN EZIAMAKA OGBULI (INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED), AND MARWA TAHBOUB (INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED), | ) ) ) ) ) ) ) ) | Case No. 1:25-cv-12614 |
| | ) ) | Honorable Georgia N. Alexakis |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) ) | |
| NORTHWESTERN UNIVERSITY, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Monica H. Khetarpal
Carol R. Ashley
Jacqueline M. Brown
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, IL 60601
Tel.: 312.787.4949
Monica.Khetarpal@jacksonlewis.com
Carol.Ashley@Jacksonlewis.com
Jacqueline.Brown@jacksonlewis.com

*Attorneys for Defendant*

Defendant Northwestern University ("Northwestern" or the "University"), by and through its undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiffs Northwestern Graduate Workers For Palestine's ("GW4P"), Ifeayin Eziamaka Ogbuli's ("Ogbuli"), and Marwa Tahboub's ("Tahboub") (collectively, the "Plaintiffs") Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

## **INTRODUCTION**

This matter should be dismissed with prejudice because Plaintiffs have not alleged that Northwestern intentionally discriminated against them based on a protected category. In fact, their grievance is not about discrimination, retaliation, or forced workplace speech at all. Rather, it is about an ideological disagreement that is not actionable under any of the statutes pled.

Plaintiffs—a student organization and two graduate students—bring this action against Northwestern under 42 U.S.C. § 1981 ("§ 1981"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"); and the Illinois Worker Freedom of Speech Act, 820 ILCS 57 ("IWFSA"). They assert five claims: (1) race discrimination under § 1981; (2) race discrimination under Title VI; (3) retaliation under § 1981; (4) retaliation under Title VI; and (5) violation of the IWFSA. Plaintiffs allege Northwestern intentionally discriminated against them by requiring all students to complete an online anti-bias training that included a segment on antisemitism. They also allege that Northwestern intentionally discriminated against them by incorporating the International Holocaust Remembrance Alliance ("IHRA") definition of antisemitism into its Policy on Discrimination, Harassment, and Sexual Misconduct ("Discrimination Policy"), and by requiring all Northwestern students to sign attestations agreeing to comply with the University's Code of Student Conduct and Discrimination Policy. Plaintiffs allege that after they refused to comply with the anti-bias training and attestation requirements Northwestern unlawfully retaliated

against them by restricting their registration status and threatening to terminate their student status. Finally, they claim that the required anti-bias training violates the IWFSA, which prohibits employers from disciplining employees for refusing to attend or participate in meetings or communications conveying the employer's views on religious or political matters.

Although styled as civil rights claims, the gravamen of the Complaint is a disagreement over political viewpoint. Because they are critical of Zionism and have adopted a "framework[] of collective liberation, anti-colonialism, and global initiatives," Plaintiffs disagree with Northwestern's antisemitism training and with its decision to adopt the IHRA definition of antisemitism. Compl. ¶ 13, 61A, 56B[1]. But those requirements apply to every student at Northwestern, regardless of race, ethnicity, or national origin. Plaintiffs' real dispute is ideological – they challenge the content of the training based on their political and ideological viewpoint, not based on an identity protected under § 1981 or Title VI. Ideological disputes over campus programming or the scope of political expression are not actionable under federal antidiscrimination statutes.[2] As a result, Plaintiffs cannot bring a cause of action based on viewpoint disagreement under laws that protect against intentional discrimination.

---

[1] Plaintiffs' Complaint contains duplicated paragraph numbers. For purposes of this motion, where a number appears twice, this brief cites the first as "¶ 54A" and the second as "¶ 54B."

[2] Federal antidiscrimination laws do not provide a cause of action for disparate treatment of speech conduct; rather, that is a First Amendment claim. *See Wax v. Trustees of the Univ. of Pa.*, 2025 U.S. Dist. LEXIS 167368, at *2, *7, 9, 20 (E.D. Pa. Aug. 27, 2025) (dismissing plaintiff's claims under Title VI and §1981 where a tenured professor faced sanctions after making statements denigrating racial minorities and the court found that federal antidiscrimination laws protect speakers rather than speech); *StandWithUs Ctr. for Legal Just. v. Mass. Inst. of Tech.*, 2025 U.S. App. LEXIS 27390, at 18 (1st Cir. Oct. 21, 2025) (emphasizing the distinction between Title VI and First Amendment protection, explaining that most of the conduct plaintiffs challenged was protected speech and that Title VI does not compel universities to quash such expression).

Similarly, Plaintiffs' IWFSA claim should be dismissed because the law only applies to workplace training, and the training at issue is for students, not employees. Moreover, the Complaint itself shows that the content of the training was intended to encourage a civil, respectful, and harassment-free campus, which falls within one of the express exceptions to the IWFSA.

Finally, this Court lacks subject matter jurisdiction over Plaintiff GW4P because it has failed to adequately plead either organizational or associational standing.

Because the Complaint fails to allege sufficient facts to state a claim for intentional discrimination, retaliation, or the IWFSA, and because this Court lacks subject matter jurisdiction over Plaintiff GW4P, Plaintiffs' Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

### RELEVANT FACTUAL BACKGROUND[3]

Plaintiff GW4P is a "collective" of Northwestern graduate students whose members are "committed to standing up for the Palestinian people though the frameworks of collective liberation, anti-colonialism, and global initiatives, primarily in the academic and institutional realms." Compl. ¶ 13. The Complaint does not allege that membership in GW4P is restricted to individuals who themselves are members of a particular race, ethnicity, or national origin. *Id.* Plaintiff Ogbuli is a second-year doctoral student in Northwestern's Department of History. *Id.* ¶ 14. Ogbuli is not "Arab, Jewish, or Muslim," but publicly associates with them. *Id.* Plaintiff Tahboub is a fifth-year doctoral candidate in Northwestern's Media, Technology & Society program. *Id.* ¶ 15. Tahboub identifies as "an American of Syrian and Palestinian national origin." *Id.* Both Ogbuli and Tahboub are currently teaching assistants. *Id.* ¶¶ 14-15. Ogbuli and Tahboub

---

[3] As required by Federal Rule of Civil Procedure 12(b)(6), Defendant accepts Plaintiffs' allegations as true, as it must, for purposes of this Motion only. Defendant reserves its right to dispute Plaintiffs' allegations in the event that the Motion is not granted, and denies and disputes Plaintiffs' allegations for all other purposes.

also assert that they wish to engage in advocacy and discourse regarding Palestinian rights but are limited in their ability to do so by Northwestern's allegedly unlawful requirements challenged in this action. *Id.*

Plaintiffs allege that in February 2025, Northwestern finally adopted the IHRA definition of antisemitism. Compl. ¶ 41. Plaintiffs allege that the definition improperly categorizes political speech about Israel as antisemitic and chills the expression of Arab and Palestinian students advocating for national liberation or criticizing Israel's government. *Id.* ¶ 43. Following that adoption, Northwestern implemented a mandatory training for all students titled "Building a Community of Respect and Breaking Down Bias" (the "training course"). *Id.* ¶¶ 44,73A. The training course included, among other segments, a video entitled "Antisemitism: Here/Now," produced in collaboration with the Jewish United Fund ("JUF"), an organization that Plaintiffs describe as equating anti-Zionism with antisemitism. *Id.* ¶ 46.

As part of the training course, all students were required to attest that they had reviewed and agreed to be bound by Northwestern's Discrimination Policy. (the "attestation") Compl. ¶ 45. Plaintiffs allege that both documents incorporate the IHRA definition.[4] *Id.* Plaintiffs claim Northwestern thereby equates criticism of Zionism with antisemitism and insulates political ideology from critique. *Id.* ¶ 49. Plaintiffs allege that these policies and training requirements coerce students into endorsing a political position, which in turn precludes the ability of Palestinians to advocate for their own perceived rights, or be branded as antisemitic and disciplined accordingly. *Id.* ¶ 58A. Plaintiffs also allege the attestation and the training are not intended to

---

[4] The Student Code of Conduct is publicly available at https://www.northwestern.edu/communitystandards/student-handbook/student-handbook.pdf, and the Discrimination Policy is publicly available at https://www.northwestern.edu/civil-rights-office/policies-procedures/policies/policy-on-discrimination-harassment-and-sexual-misconduct.html. As the Complaint notes, neither includes the IHRA definition, but instead its use was announced here: https://www.northwestern.edu/provost/federal-updates/antisemitism.html. *See* Compl. ¶ 41, fn2.

foster a civil and collaborative workplace or reduce or prevent workplace harassment or discrimination. *Id.* ¶ 62A.

All students—regardless of race, ethnicity, or national origin—were instructed that failure to complete the training and attestation would result in a registration hold blocking course enrollment or modification. *Id.* ¶ 63. Plaintiffs allege that Northwestern's enforcement of the training and attestation resulted in registration holds and threat of "termination of student status," if that hold was not resolved. *Id.* ¶¶ 63–68A.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint fails to allege facts that state a plausible claim for relief, dismissal under Rule 12(b)(6) is required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must plead particularized factual content, and not conclusory allegations, which would allow the court to plausibly infer the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. In assessing a motion to dismiss pursuant to Rule 12(b)(6), a claim should be dismissed where, accepting all well-pleaded factual allegations in the light most favorable to the plaintiff, the complaint nevertheless fails to "plausibly suggest that the plaintiff has a right to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In the context of a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff, but a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements

have been met. *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014) (citations omitted).

## ARGUMENT

I. **COUNTS I AND II FAIL TO STATE A CLAIM FOR RACE OR NATIONAL-ORIGIN DISCRIMINATION UNDER § 1981 AND TITLE VI AND SHOULD BE DISMISSED PURSANT TO FED. R. CIV. P. 12(b)(6).**

### A. § 1981 and Title VI Are Analyzed Under the Same Framework.

Section 1981 protects against intentional discrimination based on race, color,[5] or ethnicity in making and enforcing contracts—not religion, national origin, or political ideology. 42 U.S.C. § 1981(a); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). Likewise, Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Courts in this Circuit analyze § 1981 and Title VI claims together because they require proof of the same elements. *See Lubavitch-Chabad of Ill., Inc. v. Northwestern Univ.*, 6 F. Supp. 3d 806 816 (N.D. Ill. 2013); *Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987). Because Plaintiffs' § 1981 and Title VI claims rest on the same factual allegations and legal theory of intentional race discrimination, this Court should evaluate them under a unified standard for intentional race discrimination, with the exception that Title VI, but not § 1981, prohibits national origin discrimination.

---

[5] Color is a protected category under both § 1981 and Title VI, but based on the allegations in the Complaint, it is not at issue in this lawsuit. Therefore, Northwestern has not addressed it as a relevant protected category in its argument.

### B. Plaintiffs Have Not Alleged Intentional Race-Based Discrimination.[6]

Title VI and § 1981 only protect against *intentional* discrimination. *Alexander v. Sandoval*, 532 U. S. 275, 280 (2001) (Title VI); *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982) (§ 1981). To survive dismissal, Plaintiffs must plausibly allege that their race, ethnicity, or national origin was the *but-for* cause of the adverse action. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1014–15 (2020). They can do so via the direct or indirect method. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 393 (7th Cir. 2010). Plaintiffs fail on both counts because they only summarily state that "Defendant Northwestern University intentionally discriminate[d]" against them. Compl. ¶¶ 56, 63. This conclusory statement is inadequate to establish intentional discrimination under either method. *See Iqbal*, 556 U.S. at 680-81 (rejecting as conclusory allegation that officials "adopted a policy "because of," not merely "in spite of," its adverse effects upon an identifiable group'" (quoting *Pers. Admin'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979))).

### 1. There Are No Allegations of Direct or Circumstantial Evidence of Race-Based Animus.

To demonstrate discrimination under the direct method, Plaintiffs must provide "direct evidence of — or sufficient circumstantial evidence to allow an inference of — intentional racial discrimination . . ." *Montgomery*, 626 F.3d at 393 (citing *Coffman v. Indianapolis Fire Department*, 578 F.3d 559, 563 (7th Cir. 2009). "Direct evidence typically requires an admission of discriminatory animus," or through circumstantial evidence that establishes "discriminatory motive through a longer chain of inferences." *Mach v. Will County Sheriff*, 580 F.3d 495 (7th Cir.

---

[6] During the October 20, 2025 hearing on Plaintiffs' Application for Temporary Restraining Order, Dkt. No. 7, Plaintiffs' counsel confirmed that they are only proceeding on an intentional discrimination basis, and not on a hostile environment theory. Temporary Restraining Order Hearing Transcript, *Tahboub et. al. v. Northwestern University,* 1:25-cv-12614 U.S. Dist. Court, N.D. Ill., Oct. 20, 2025), at p. 11:23-12:5. The Complaint also does not contain any allegations or counts alleging hostile environment harassment.

2009); *Goodman v. Bowdoin Coll.*, 380 F.3d 33, 43 (1st Cir. 2004) (observing that "racial animus" is "a necessary component of . . . claims under" Title VI).

Plaintiffs' Complaint does not include any such allegations. There are no allegations of racial epithets, slurs, statements reflecting bias, or facts suggesting that Northwestern acted with hostility toward Arabs, Palestinians, or any other race or ethnicity in adopting or enforcing its training and attestation requirements. Indeed, nothing in the Complaint asserts that Plaintiffs were required to comply with these requirements *because of* their race or ethnicity.

Furthermore, the Complaint confirms that the challenged training course and attestation are neutral on their face. Both the training course and attestation requirements apply equally to all students, regardless of race, color, ethnicity, or national origin. Compl. ¶ 44-45. There is no allegation that either the training course or the attestation requires endorsement of any particular content. Plaintiffs do not identify a single instance where Arab, Palestinian, or any other students were singled out or treated differently in how the requirement was applied. The training course was mandatory for *every* student, regardless of race, ethnicity, or national origin.

The reasoning in *Lubavitch* is instructive. *See generally Lubavitch*, 6 F. Supp. 3d 806. In *Lubavitch*, Northwestern revoked recognition of the Jewish "Chabad House" because of underage drinking violations, which Plaintiffs claimed was evidence of intentional religious discrimination because non-Jewish fraternities and sororities remained recognized campus organizations despite the fact that they had similar issues. *Id.* at 810-815. The Court rejected that argument, finding that the University's decision was motivated by misconduct, not religion, because other Jewish organizations on campus were unaffected. *Id.* at 816-817.

8

The same reasoning applies here. The Complaint does not allege—nor could it—that all Arabs or Palestinians share identical political views. To the contrary, anyone, regardless of race, ethnicity, or national origin, could share or reject Plaintiffs' views about Zionism, antisemitism, Israel, or Palestine, and therefore they could also share or reject Plaintiffs' opinions about the content of the training or attestation. Indeed, Plaintiffs themselves allege that "some Jews incorporate Zionism into their religious and cultural beliefs," while others identify as "antizionist Jews." Compl. ¶¶ 8, 48. Like the alcohol policy in *Lubavitch*, here, the University's training requirement universally applied to all students and did not single out any group based on a protected identity status. As a result, the Plaintiffs' protected class could not be the *but for* cause of alleged discrimination. *See Comcast Corp.,* 589 U.S. at 341.

### 2. Plaintiffs Also Fail to Allege Intentional Discrimination Under the Indirect Method.

To proceed under the indirect method, Plaintiffs must allege that (1) they are members of a protected class; (2) they met the University's legitimate expectations; (3) they suffered an adverse action; and (4) they were treated less favorably than similarly situated individuals outside of their protected class. *Brewer v. Board of Trustees of the University of Illinois*, 479 F.3d 908, 915 (7th Cir. 2007). Plaintiffs' allegations do not satisfy any of these elements.

### a. GW4P and Ogbuli Have Not Pled That They Are Members of a Protected Class.

Plaintiff Ogbuli alleges she "is not Arab, Jewish, or Muslim," conceding that she does not fall within a protected category for purposes of this lawsuit. Compl. ¶ 14. Instead, she claims protected status because she "associates with" those who are and wishes to engage in pro-Palestinian advocacy.[7] *Id.* Similarly, GW4P claims its members fall within a protected class

---

[7] Plaintiffs mention Muslim and religious identities multiple times in the Complaint. Compl. ¶¶ 9, 14, 69A. They also allege anti-Zionist Jews is a cognizable ethnic identity. Compl. ¶ 8. However, neither is a protected class under either

because they "associate with" members of a protected class. Compl. ¶ 13-15. However, Plaintiffs cannot establish that they are members of a protected class by association or proxy under the facts alleged.[8]

Association-based claims arise in circumstances involving relationships or conduct directly tied to race, such as interracial marriage or familial relationships. *Parr v. Woodmen of World Life Insurance Co*., 791 F.2d 888, 890 (11th Cir. 1986) (holding § 1981 prohibits discrimination based upon an interracial marriage); *Tetro v. Elliott Popham Pontiac*, 173 F.3d 988, 994 (6th Cir. 1999) (held that a white parent stated a viable claim under Title VII when his employer took adverse actions against him after learning that his daughter was bi-racial). None of these circumstances are applicable here. Plaintiffs do not claim to associate with Arabs or Palestinians as a racial, ethnic, or national origin group. Instead, they claim to associate with individuals—regardless of protected class—who hold certain political views. In fact, the Complaint repeatedly frames the issue as an ideological dispute, acknowledging that ideology, and not identity, bind the Plaintiffs together. *See* Compl. ¶¶ 1, 3, 70, 74 ("[Northwestern] equates criticism of Zionism with antisemitism…"; the training course and attestation requirements "impose[ ] ethnic homogeneity and political orthodoxy on students…"; Plaintiffs seek to "advocate for the rights of Arabs and Palestinians."). Therefore, Plaintiffs' alleged harm stems from disagreement with ideas presented in the University's antisemitism training, not from bias against them as Arabs, Palestinians, or any other racial, ethnic, or national origin group.

---

§ 1981 or Title VI. Religion is not a protected category under § 1981 or Title VI, so references to Jewish or Muslim identity are insufficient to plead a protected class under the law. *Anooya v. Hilton Hotels Corp.*, 733 F.2d 48, 49–50 (7th Cir. 1984); *Lubavitch-Chabad, of Ill., Inc.*, 6 F. Supp. 3d at 815–16.

[8] Plaintiff Tahboub asserts she is "an American of Syrian and Palestinian national origin." Compl. ¶ 14. Assuming, *arguendo*, that this constitutes membership in a protected class for purposes of Title VI, Tahboub nonetheless does not allege any facts connecting her national origin to any intentional discrimination by Northwestern.

In fact, based on the allegations in the Complaint, GW4P defines itself exclusively based on these ideological grounds. There are no allegations that membership in a particular race, ethnicity, or national origin is a criterion for GW4P membership. Instead, the organization describes itself as a "collective" whose members are "committed to *standing up for* the Palestinian people though the frameworks of collective liberation, anti-colonialism, and global initiatives, primarily in the academic and institutional realms." Compl. ¶ 13. (emphasis added) It is not alleged that membership in GW4P is dependent on an individual's racial, ethnic, or national origin identity, or even based on advocacy for or association with a racial, ethnic, or national origin group, but instead, it is based on membership in a group of people who see the world "through the frameworks of collective liberation, anti-colonialism, and global initiatives." Therefore, membership in GW4P is based on advocacy for a political or ideological "framework" – not any defined race, ethnicity, or national origin.

In short, Plaintiffs allege they  anticipate being penalized for what they – and the people they associate with – *believe* about Israel and Palestine, not for *who they are*. That makes this a case about ideology, not identity, and outside the reach of § 1981 and Title VI. As a result, Plaintiffs' discrimination claims should be dismissed.

Finally, Plaintiffs attempt to assert a protected class for anti-Zionists. Although Jews have long been recognized a racial and ethnic minority under federal civil rights laws, being an anti-Zionist Jews is not. By narrowing the alleged class from Jews to "antizionist Jews," Plaintiffs introduce a political qualifier that transforms the group from a racial or ethnic one into a religious, cultural, political, or ideological one, which places the group outside the protection of either statute. Plaintiffs themselves allege that anti-Zionism is an ideology and criticism of political practices: "Plaintiffs agree that some Jews incorporate Zionism into their religious and cultural

beliefs…. When it comes to Zionism, however, Northwestern equates criticism of *political* practices and *ideologies* with discrimination against Jews themselves." Compl. ¶¶ 48–49 (emphasis added). Cultural, ideological, and political opinions are not protected under § 1981 or Title VI. *Keating v. Carey*, 706 F.2d 377, 384 (2d Cir. 1983) ("[Section] 1981, however generously construed, does not prohibit discrimination on the basis of political affiliation."); *Hall v. Twitter, Inc.*, 2023 U.S. Dist. LEXIS 80569, *8 (holding that § 1981 does not prohibit discrimination based on political affiliation and rejecting plaintiff's argument that political beliefs associated with a racial group suffice to state a claim). Therefore, whether either named Plaintiff or members of GW4P are anti-Zionist (Jews or otherwise) is insufficient to allege a protected class.

### b. Plaintiffs Have Failed to Identify Any Similarly Situated Students Outside Their Protected Class Who Were Treated More Favorably.

Not only have Plaintiffs failed to identify any similarly situated students outside the alleged protected class who were treated more favorably, they actually allege that *every* Northwestern student—regardless of race, ethnicity, or national origin—was subject to the same requirements and the same consequence for noncompliance. Compl. ¶¶ 44-45. As a result, the Complaint fails to allege sufficient facts to meet the similarly situated prong of the indirect method of proof.

Plaintiffs attempt to identify a group of individuals who were similarly situated and outside their protected class by comparing the anti-bias training course and Northwestern's sexual-misconduct prevention training, claiming that students who failed to complete the latter were not subject to registration holds. Compl. ¶¶ 7, 68. However, Plaintiffs have failed to plead sufficient facts to establish that the two trainings are similar enough to draw that comparison. The "similarly situated" inquiry is "flexible, common-sense, and factual," asking whether there are "sufficient commonalities on the key variables" to permit a meaningful comparison. *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012). "In other words, the proposed [comparable training] must be

similar enough to permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision." *Id.*

Plaintiffs do not allege sufficient facts to construct such commonalities. To survive a motion to dismiss, Plaintiffs should have alleged sufficient facts to show that those who failed to take the sexual harassment training are directly comparable "in all material respects[.]" *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012); *see also Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008) ("The 'similarly situated' prong establishes whether all things are in fact equal."). More specifically, Plaintiffs should have alleged sufficient facts to "eliminate other possible explanatory variables… which helps [to] isolate the critical independent variable — discriminatory animus." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Instead, Plaintiffs summarily allege there are two trainings, and one has different consequences than the other. This fails to meet the applicable pleading requirements because it fails to allege facts that would establish that the trainings were similar in material respects. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555–56. As a result, Plaintiffs have failed to plead that there are any "similarly situated" individuals outside their protected class who were treated more favorably.

## II. PLAINTIFFS' RETALIATION CLAIMS (COUNTS III AND IV) UNDER § 1981 AND TITLE VI FAIL AND SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE THERE IS NO CONNECTION BETWEEN POTENTIAL TERMINATION OF STUDENT STATUS AND OPPOSITION TO THE REQUIREMENTS.

In order to state a cause of action for retaliation under § 1981 and Title VI, Plaintiffs must allege (1) engagement in protected activity; (2) a materially adverse action; and (3) a causal connection between the two. *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003); *Clacks v. Chase*, 108 F.4th 950, 958 (7th Cir. 2024). Here, the Complaint fails to allege that Northwestern took any

materially adverse action *because* of Plaintiffs' opposition to what they believed were discriminatory training course and attestation requirements.

The only "adverse action" Plaintiffs identify is the registration hold and the potential loss of student status that followed if they refused to take the mandatory training and sign the attestations. Compl. ¶ 4. That consequence, by Plaintiffs' own description, would be triggered by their refusal to comply with a neutral, campus-wide rule that applied to *all* students, not one selectively imposed on Arab or Palestinian students. Nothing in the Complaint suggests that Northwestern singled out Plaintiffs for differential treatment or applied the policy selectively against students opposed to the training or attestation.

On the contrary, the Complaint expressly states that "Northwestern coerced many of its students into completing the Attestations and watching the JUF video by placing a hold on the registration of students who did not." Compl. ¶ 4. By Plaintiffs' own admission, the same hold applied to *any* student who failed to complete the training, regardless of race, religion, or identity. There is no allegation that students who were on a leave, studying abroad, or failed to take the training for some other, non-ideological reason, were not subject to the same consequences.

Accordingly, Counts III and IV fail to state a claim and should be dismissed with prejudice.

### III. THE ILLINOIS WORKER FREEDOM OF SPEECH ACT CLAIM (COUNT V) FAILS AND SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE THE TRAINING WAS NOT IMPERMISSIBLE WORKPLACE TRAINING.

Plaintiffs' final count, brought under the IWFSA, fails for two reasons: first, the statute only applies to workplace training, not student training, and second, even if it were workplace training, it falls within the "civility training" exception to the statute.

The IWFSA prohibits an employer from taking adverse employment action against an employee for refusing to attend or participate in meetings or communications about the employer's opinions on political or religious matters. 820 ILCS 57/5(a); *See also Illinois Pol'y Institute v. Flanagan*, No. 24-cv-06976, 2025 U.S. Dist. LEXIS 203751, at *4 (N.D. Ill. Sep. 30, 2025). The IWFSA reflects First Amendment principles by ensuring employees are not compelled to listen to employer speech on politics or religion, protecting workplace autonomy and freedom of belief. *Id.*

Plaintiffs' allegations make clear that the challenged conduct has nothing to do with employment or workplace speech. On its face, the Complaint challenges a *student* training. Specifically, the Complaint:

- Complains about the training course and attestation that "students" are required to complete. Compl. ¶3.
- Alleges Northwestern's faculty took issue with the imposition of training on "students." Compl. ¶5.
- States the complained-of consequence for failing to complete the training and attestation is termination of "student" status. Compl. ¶6.
- References the "student" members of the GW4P. Compl. ¶13.
- Alleges that the IHRA definition of antisemitism restricts Arab and Palestinian "students'" expression, and that the training requirement applied to all "students." Compl. ¶ 43, 44.
- Describes Northwestern's adoption of the IHRA definition of antisemitism and implementation of the training module as a condition of "student" enrollment and compliance with the Code of *Student* Conduct. Compl. ¶45.

Significantly, there is no allegation that faculty, staff, or any other University employees were required to complete the training at issue. To the extent either individual Plaintiff is employed as a graduate student, based on the allegations in the Complaint, the training and attestation requirements applicable to them were based solely on their student status. Absent an applicable employment relationship to the training, the IWFSA does not apply.

Even if the training course were employment-related, Plaintiffs' claim would still fail because based on the allegations in the Complaint, it falls squarely within the statute's exceptions. The Act expressly excludes communications that are intended "to promote … civility, mutual respect, or non-harassment." 820 ILCS 57/10(c). Plaintiffs acknowledge that the training was called "Building a Community of Respect and Breaking Down Bias" and included segments educating the students about both antisemitism and Islamophobia. Compl. ¶¶ 44, 70. Plaintiffs' description of the training shows that it was designed to promote civility, respect, and compliance with Northwestern's anti-harassment policies — precisely the kind of program that the IWFSA does not reach.

Regardless of Plaintiffs' ideological disagreement with the training course's content or doubt its effectiveness, that disagreement does not transform a civility or anti-bias initiative into a prohibited political communication under the statute. The Act does not shield individuals from exposure to ideas they find objectionable; it simply bars employers from compelling employees' participation in partisan or religious advocacy unless the training is intended to promote civility. Plaintiffs' allegations describe an educational program promoting mutual respect, even if it is a message that Plaintiffs personally disagree with. Therefore, it falls outside the scope of the IWFSA.

Because the Complaint identifies no employer-sponsored meeting about political or religious matters and no conduct outside the statute's clear exceptions, Count V fails to state a claim and should be dismissed with prejudice.

## IV. GW4P HAS FAILED TO SUFFICIENTLY PLEAD ASSOCIATIONAL OR ORGANIZATIONAL STANDING AND THEREFORE SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P 12(b)(6) AND 12(b)(1).

An organization may sue either on its own behalf (organizational standing) or on behalf of its members (associational standing) but GW4P has failed to sufficiently plead either basis for standing. *See Common Cause Indiana v. Lawson*, 937 F.3d 944, 949 (7th Cir. 2019). In order to establish associational standing, GW4P must plead that (1) its student members have standing to sue in their own right, (2) the interests it seeks to protect by this lawsuit are germane to its purpose, (3) and none of the claims it asserts nor the relief it requests requires the participation of its individual members. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017). To establish organizational standing, GW4P must plead that it is under an actual or imminent threat of suffering a concrete and particularized "injury in fact," the injury is traceable to Northwestern's conduct, and that it is likely that a favorable judicial decision will prevent the injury. *Common Cause Indiana*, 937 F.3d at 949.

Here, GW4P has failed to sufficiently allege either organizational or associational standing. GW4P has failed to plead associational standing because it has not sufficiently pled that their members have standing to sue in their own right. With respect to Plaintiffs' discrimination claims, the Complaint offers no detail about who GW4P's members are, how membership is determined, or whether it bears any relation to race or ancestry. Plaintiffs must allege facts—not conclusions or generalizations—showing that the organization's members fall within a category protected by § 1981 or Title VI, and they have not done so. *Iqbal,* 556 U.S. at 673. In fact, Plaintiffs have failed to allege that *any* members of GW4P are members of any race, ethnicity, or national origin

protected classes under § 1981 or Title VI.[9] Instead, they have only alleged that the members of GW4P "stand[ ] up for" certain Palestinians who share a common political and ideological "framework." Compl. ¶ 13. That is not recognized as a protected class under § 1981 or Title VI, so membership in GW4P under this rubric would not allow members to sue for intentional discrimination under § 1981 or Title VI in their own right. *See supra* p. 6-12.

The same is true for Plaintiffs' retaliation and IWFSA claims. Based on Plaintiffs' own allegations, there is no causal connection between Plaintiffs' refusal to comply with training and attestation requirements based on a particular ideology and their loss of student status. *See, supra* p. 17. Similarly, Tahboub, Ogbuli, and every member of GW4P – indeed all Northwestern students – took a *student* training, not a workplace training, so none of them would have standing to bring an IWFSA claim, which only applies to workplace training. *See, supra* p. 18-19.

GW4P has similarly failed to plead organizational standing. GW4P attempts to assert an injury in fact by alleging it had to "divert resources away from its regular activities" as a result of Northwestern's actions. Compl ¶ 13. However, this general and conclusory statement fails to describe what those resources are, what the group's regular activities are, and in what way those resources were diverted to secure protected rights. Compl. ¶ 13. As a result, the allegation fails to meet the pleading standard and cannot support GW4P's assertion of organizational standing. *Iqbal,* 556 U.S. at 673; *Twombly*, 550 U.S. at 556; *see also Papasan* v. *Allain*, 478 U.S. 265, 286 (1986) (a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do).

---

[9] Other than graduate student Eden Melles, whose race, ethnicity, and national origin are not alleged, the Complaint does not identify any other members of GW4P. Compl. ¶ 35. Indeed, it does not even state that named Plaintiffs Tahboub or Ogbuli are members of the group.

Because GW4P has failed to establish that it would have standing to state any of the claims involved in this lawsuit, this Court lacks subject matter jurisdiction over its claims. Fed. R. Civ. P. 12(b)(1); *see also Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). As a result, GW4P should be dismissed with prejudice pursuant to both Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant respectfully requests the Court grant its motion in its entirety with prejudice and award any other relief it deems just and proper.

Dated: November 19, 2025               Respectfully submitted,

**NORTHWESTERN UNIVERSITY**

By:\_\_\_\_/s/ Monica H. Khetarpal_____
         One of Their Attorneys

Monica H. Khetarpal
Carol R. Ashley
Jacqueline M. Brown
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, IL 60601
Tel.: 312.787.4949
Monica.Khetarpal@jacksonlewis.com
Carol.Ashley@Jacksonlewis.com
Jacqueline.Brown@jacksonlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I, Monica H. Khetarpal, an attorney, certify that on November 19, 2025, I caused a true and correct copy of the attached ***Defendants' Memorandum of Law In Support of Its Motion to Dismiss Plaintiffs' Complaint*** to be served to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served on all attorneys of record registered with the Court's ECF/CM system.

/s/ Monica H. Khetarpal
One of Defendants' Attorneys